# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

Appliance Zone, LLC          )
                             )
                Plaintiff,   )       CASE NO. 4:09-CV-0089SEB-WGH
                             )
v.                           )
                             )
NexTag, Inc.                 )       DECLARATION OF MARK A.
                             )            BRADLEY
                Defendant.   )
                             )       (Electronically Filed)
_____    )

I, Mark A. Bradley, declare that:

1.      I am the Senior Vice President of Defendant NexTag, Inc., a Delaware corporation ("NexTag") with its principal place of business in the City of San Mateo, California. I have been employed by NexTag since 1999. My duties include management of worldwide sales. The following facts are true of my own knowledge and, if called upon, I would competently so testify.

2.      NexTag is an online comparison shopping website for consumers to shop and compare prices and terms for a wide variety of products and services. NexTag itself does not sell or distribute the products or services featured on its site. At the core of NexTag's business are proprietary technologies and algorithms that enable shoppers to quickly compare prices and find the best deals on millions of products and services. For thousands of merchants and service providers, NexTag provides an extremely efficient sales channel with its highly qualified traffic. Direct, self-serve, merchants like Appliance Zone elect to advertise their services on NexTag by entering into an advertising agreement, providing credit card information and providing a listing of products to be advertised. In exchange for the advertising services, merchants pay NexTag an advertising fee.

3.      Most merchants who advertise their products through NexTag use our internet portal to create and manage their seller accounts. Thus, if a merchant decides it wants to engage NexTag to supply services, it will do so through our website. To engage NexTag, the merchant must go through a number of on-line steps on five separate web pages to create and activate a

seller account. One of those steps requires the merchant to acknowledge expressly that it agrees to the terms and conditions of NexTag's then existing Merchant Lead Referral Terms of Service agreement by affirmatively "clicking" to check a box next to the statement "I accept the NexTag Terms of Service". If the Terms of Service agreement is not accepted by checking this box, the merchant cannot proceed with its account creation and cannot have its products advertised on NexTag's sites. Adjacent to the box, the words "NexTag Terms of Service" is a hyperlink to the form of Merchant Lead Referral Terms of Service itself. That hyperlink takes the merchant to a readily readable, downloadable and printable copy of the agreement. The text of the agreement is displayed in a scrollable window that can also be enlarged to a full-screen copy. The preamble to the agreement is visible without scrolling down, and states that "[b]y accepting the Merchant Lead Referral Terms of Service (the 'Agreement'), you ('Merchant' or 'You') are entering into a legal agreement with NexTag, Inc. ('NexTag') that exclusively governs your participation in the NexTag Commerce Search Engine." The acceptance box and Terms of Service agreement link are located on the same page where the merchant provides contact information and before the web page where any payment or credit card information is requested, immediately above the "Continue" button.

4.       According to our records, plaintiff Appliance Zone, LLC ("Appliance Zone") applied through our website to become a NexTag on-line merchant on March 9, 2009. Our records indicate that in addition to completion of other required steps, Appliance Zone checked the box and accepted our November 1, 2008 U.S. form of Terms of Service agreement. The acceptance occurred at 7:09 a.m. (PDT) on that date. NexTag and Appliance Zone are not parties to any other agreements.

5.       Attached hereto as Exhibit A is a true and correct copy of the November 1, 2008, form of the Merchant Lead Referral Terms of Service agreement (the "Agreement") for the U.S. This form is the document to which the hyperlink, next to the box checked by Appliance Zone, was linked and is the Terms of Service agreement form accepted by Appliance Zone.

6.       Attached hereto as Exhibit B is a true copy of an email from "justin.a@applicancezone.com" dated March 9, 2009, at 10 a.m., stating in part that he was going

to "go ahead and create an acct., and hopefully will have our products imported into your system by today." Presumably, this was sent at 10 a.m. EDT, a few moments before the Terms of Service agreement was accepted by Appliance Zone. At 10:09 a.m. EDT (7:09 a.m. PDT) our records show the Terms of Service agreement was accepted on line by Appliance Zone. Later that day, an email from justin.a@appliancezone.com was received, which stated in part: "Our products were uploaded to your sever [sic] ftp://upload.nextag.com/private/AZ237802 @ 10:46.am the file name is products.csv, not sure how your system will react to the file (how it will know to grab the file). but it is in the NexTag product format. I would very much appreciate it if you can get these listed asap. You're user-friendly site & navigation made it very easy for us to set this up, I'll notify Jim that our NexTag acct & products are setup, and that we are just waiting for the products to be displayed. thanks...". A true copy of the email dated March 9, 2009 at 11:01 a.m. is attached as Exhibit C hereto.

7.    A direct merchant cannot complete its engagement of our services through the internet site if it does not check the box stating its acceptance of the Agreement. We do not provide our services to a direct merchant like Appliance Zone unless it either accepts the Agreement by checking the box or separately enters into a hard copy advertising agreement. If Appliance Zone had not accepted the Agreement, we would not have accepted and processed its product feed and Appliance Zone's product feed content would not have appeared on our site. It is only because of the Agreement and its terms that Appliance Zone's images, about which it now complains, ever appeared on our site.

8.    One of the terms of the Agreement is that any litigation between us and a merchant must take place in a court which has jurisdiction over San Mateo, California, where we are located. We would not provide services if a merchant somehow tried to avoid this part of the Agreement unless we engaged in special negotiations to do so.

9.    Merchants who register for our services through our online portal, such as Appliance Zone, have access to our online account management tool, which allows the merchants to, for example, update contact information, adjust the price that they agree to provide for our services and provide product information for products that the merchants wish to advertise on our

site.  The merchant's online account includes a link to the current Agreement.

        10.     Merchants who advertise their products on our site do so by providing us with information on the products that they wish to advertise.  The product information provided by the merchants generally includes information such as product title and description, manufacturer, price, shipping cost, etc.  In this case, Appliance Zone elected to provide us with its product information through a "product feed", which is essentially a database of product listings that the merchant wishes to have displayed on our site.  Appliance Zone uploaded its data feed to a NexTag owned and operated site.  Appliance Zone's initial product feed included more than 19,000 products.

        11.     Most of the product information on our site is provided by merchants, and we include in the Agreement a specific license from the merchant for the "non-exclusive right and license to link to and store, reproduce,…transmit, display (publicly or privately), …use, and distribute" that merchant's "product list, related products…, graphics, trademarks, service marks, logos, trade names, any product…listings and other text, images and graphics…."  (See paragraph 2 of Exhibit A.)  To my knowledge, Appliance Zone's complaint relates to our use of images that we obtained from Appliance Zone in its product feed, which were images that Appliance Zone itself uploaded to our site pursuant to this license and the other terms of the Agreement.  We used the images supplied by Appliance Zone in the same way that we use images provided by thousands of other merchants and in reliance on the license that Appliance Zone provided in the Agreement.

        12.     For some product categories, we attempt to collect and consolidate offers from different merchants into one web page.  In this way, users can view product information for the product and see all merchant offers for that product on one page.  An example of such a product is attached as Exhibit D.  In cases where products are consolidated in this way, most merchants who advertise the product will provide product information (such as picture, product description, manufacturer, etc.) for the product, but only one version of product information is displayed.  As a result, one merchant's product information may be used to create the product page that will include listings from multiple other merchants.  A cursory review of our site would reveal that

this is the case, and thousands of merchants, who are parties to the same Merchant Lead Referral Terms of Service that Appliance Zone accepted, operate on our site with this approach.

13.     When we investigated our site after Appliance Zone's complaint, we also found that Amazon.com, which aggregates product information it obtains from many companies and posts that aggregated information on our site through an agreement with us, included in its materials what appeared to be two Appliance Zone product images.  Although Appliance Zone did not complain about our use of the images received from Amazon.com, we removed the images from our site.

14.     Based on the allegations of the complaint in this matter, we anticipate that most, if not all, of the witnesses who would be involved in this matter are located at our facility in San Mateo, California, where I have my office.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and was executed on the 22 day of July, 2009, at San Mateo, California.

_____
Mark A. Bradley

# EXHIBIT 1

NexTag·                                                                                    Close Window

Merchant Lead Referral Terms of Service

Revision Date: November 1, 2008

By accepting the Merchant Lead Referral Terms of Service (the "Agreement"), you ("Merchant" or "You") are entering into a legal agreement with NexTag, Inc. ("NexTag") that exclusively governs your participation in the NexTag Commerce Search Engine.

RECITALS

A. NexTag provides comparative shopping services (the "Commerce Search Engine") on sites owned or operated by NexTag or its partners on the World Wide Web and otherwise (the "Websites").

B. You ("Merchant") wish to participate in the Commerce Search Engine in order to market products and/or services to users of the Commerce Search Engine.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, NexTag and Merchant agree as follows:

1. Merchant Participation. NexTag may include Merchant in NexTag's Commerce Search Engine as a seller subject to the terms of this Agreement. Merchant will specify the products, prices and other product information required for the Commerce Search Engine, including but not limited to sales tax, shipping cost and in-stock/availability information necessary to display Merchant's product listings within the Commerce Search Engine, and will update all such information on a regular basis, in conformance with technical guidelines established by NexTag from time to time. Merchant is solely responsible for all aspects of product selection, order processing, fulfillment and associated costs and liabilities, and for the operation of Merchant's websites and business. Merchant is also solely responsible for the accuracy of all product data, prices, URL's and other information provided by Merchant to any party to facilitate Merchant's participation in the Commerce Search Engine.

2. License to Merchant Materials. Merchant grants to NexTag a non-exclusive, worldwide right and license to link to and store, reproduce, reformat, transmit, display (publicly or privately), perform, and provide access to, use, and distribute, and to license to third parties, in any media or medium, any product list, related products and pricing data, shipping costs, sales tax information, specifications, graphics, trademarks, service marks, logos, trade names, any product or service listings and any other text, images and graphics supplied for advertising purposes, whether collected by NexTag from the Merchant Site or provided to NexTag by Merchant via data feed (collectively "Merchant Materials"). In the event Merchant desires NexTag to remove Merchant Materials and NexTag fails to remove Merchant Materials from the Commerce Search Engine, Merchant agrees that it shall not seek nor pursue any remedy whatsoever unless NexTag has failed to take any action to remove Merchant Material and sixty (60) days have elapsed after NexTag's receipt of the third written notice from Merchant to remove Merchant Material. If Merchant has reason to believe that any Merchant Materials do not comply with the provisions set forth in Section 4 or Section 5 of this Agreement, it shall provide NexTag with notice of such noncompliance, including all necessary details to identify the noncompliant Merchant Materials, as soon as possible. NexTag may disable Merchant's account and/or remove, refuse to display or reject Merchant content or product listings immediately for any reason, in NexTag's sole discretion. Nothing set forth herein shall create any obligation for NexTag to monitor Merchant Materials. In its effort to provide the most optimal service to its Merchants, NexTag may, from time to

time, test new services and functions in the Commerce Search Engine. Merchant agrees that NexTag has the right to use Merchant Materials to engage in such tests.

3. Merchant Fees and Merchant Account.

(a) Merchant agrees to pay a fee for each Referral (a "Lead Referral Fee"). A Referral occurs when a user clicks on a Merchant product listing or other Merchant advertising link displayed within the Commerce Search Engine. NexTag will be solely responsible for calculating the number of Referrals to the Merchant as well as the Lead Referral Fees and any other fees incurred by Merchant through its participation in the Commerce Search Engine. Merchant agrees that NexTag's systems and reporting shall be exclusively relied upon in the determination of any applicable fees.

(b) Subject to any limitations set forth in this Agreement and NexTag's rights under this Agreement, NexTag may include Merchant in the Commerce Search Engine in exchange for Merchant's performance of its obligations hereunder, including payment of the fees and other amounts in accordance with the programs established by NexTag. NexTag may change any aspect of the Commerce Search Engine or the policies or programs associated with the Commerce Search Engine, including without limitation, the operation, organization, pricing programs, any minimum fee requirements on SKU and/or product category basis, or any other segmentation basis for product and/or service listings within the Commerce Search Engine at any time and in its sole discretion. Merchant may specify its Lead Referral Fee (subject to NexTag pricing policies and programs, including but not limited to pricing minimums, pricing surcharges and other requirements, and provided that NexTag may automatically adjust Merchant's Lead Referral Fee bid to be in compliance with any of the foregoing) for each product by either using the interface available at NexTag's website or, if approved by NexTag, by including the Lead Referral Fee in the product data file periodically submitted by Merchant to NexTag.

(c) Merchant agrees to pay all other applicable charges, taxes, and fees incurred through participation in the Commerce Search Engine and any other marketing programs offered by NexTag and in accordance with payment terms in effect at the time such amounts are incurred.

(d) Merchant agrees to establish a Merchant Account by providing valid credit card information. Merchant also agrees to provide NexTag with accurate and current credit card information at all times, and to update such information immediately if it changes. NexTag may, in its sole discretion, either (i) require advance payment for all Lead Referral Fees or (ii) collect payment periodically in arrears for Lead Referral Fees incurred by Merchant. In the event advance payment is required, Merchant authorizes NexTag to charge Merchant's credit card for an initial deposit in the amount specified by Merchant and as an advance against future charges/fees to be paid by Merchant to NexTag, and all Lead Referral Fees are due and payable at the time services are rendered. All Lead Referral Fees will be deducted from the Merchant Account as incurred. If Merchant's Account balance declines at any time reasonably close to zero then Merchant may, at NexTag's discretion, be suspended or removed from the Commerce Search Engine until additional funds are deposited into the Merchant Account. NexTag will automatically deposit additional funds into the Merchant Account by charging Merchant's credit card if so directed by Merchant. Merchant further authorizes NexTag to charge Merchant for actual Lead Referral Fees in the event the Lead Referral Fees exceed the deposit set by the Merchant. In the event advance payment is not required by NexTag, Merchant authorizes NexTag to charge Merchant's credit card periodically in arrears for Lead Referral Fees or, if approved by NexTag, Merchant agrees to pay Lead Referral Fees as invoiced and pursuant to the invoice terms, which NexTag may change in its sole discretion. Merchant must submit any claims or disputes with respect to any charge to the Merchant Account in writing to NexTag within 45 days of such charge, otherwise such claim or dispute will be deemed irrevocably waived. The use of a credit card to service Merchant's account and discharge Merchant's financial obligations under this Agreement is offered by NexTag for the convenience of the

Merchant only and does not create any rights or remedies for Merchant not expressly stated herein. In consideration of this benefit Merchant therefore agrees to rely exclusively on the rights and remedies set forth herein. Accordingly, Merchant agrees that it shall not initiate any dispute or chargeback process through any credit card provider under any circumstances (other than verified fraudulent use) and attempting to do so shall constitute a material breach of this Agreement. In the event that any amount owed by Merchant to NexTag is not paid by the date when due, NexTag may assess a late fee of 1.5% per month or the maximum amount allowable under applicable law, whichever is lower, on such amount. In the event that legal or other collection assistance is required to collect any overdue balance or to enforce any provision of this Agreement, Merchant shall pay for such legal or other collection assistance, including without limitation reasonable attorney's fees and expenses. Merchant also agrees to reimburse NexTag for any costs, fees or expenses it may incur in connection with a dispute or chargeback initiated by Merchant with a credit card provider in violation of this provision or otherwise in bad faith. NexTag may in its sole discretion determine the order in which it credits payments against amounts that are due.

(e) NexTag may from time to time offer promotional or trial inclusion in the Commerce Search Engine to merchants (a "Promotional Offer"). If Merchant participates in the Commerce Search Engine solely through a Promotional Offer that does not require any Lead Referral Fee, and Merchant meets criteria to participate under the terms of such Promotional Offer, then (i) Sections 3(a) and 3(d) hereof shall not apply during the time the Merchant conforms to the terms of such Promotional Offer; (ii) subject to any limitations set forth in this Agreement and NexTag's rights under this Agreement, NexTag may, in its sole discretion, include Merchant in the Commerce Search Engine subject to the terms and conditions of the Promotional Offer and the Merchant Lead Referral Terms of Service; and (iii) NexTag may alter the terms and conditions of the Promotional Offer, including without limitation, the operation, organization, and programs within the Commerce Search Engine, at any time and in its sole discretion. If at any time Merchant no longer meets the criteria of such Promotional Offer, NexTag terminates Merchant's participation in the Promotional Offer or the Merchant declines to participate further in such Promotional Offer, then at such time Sections 3(a) and 3(d) shall again apply and be binding on NexTag and Merchant. NexTag may terminate Merchant's participation in any Promotional Offer at any time, for any reason.

(f) NexTag may provide Merchant with online access to tools and information relating to the Commerce Search Engine and Merchant's account (the "Dashboard"). NexTag may change the tools or information accessible through the Dashboard or terminate access to the Dashboard at any time. Merchant shall use the Dashboard in compliance with this Agreement and only as appropriate to facilitate Merchant's use of the Commerce Search Engine in compliance with this Agreement. Merchant is responsible for protecting its passwords to the Dashboard and ensuring that only authorized individuals have access to its account through the Dashboard. NexTag may rely on any instructions sent to it through the Dashboard as binding on Merchant. NexTag communicates information regarding Merchant's account and the Commerce Search Engine through the Dashboard, and Merchant is responsible for accessing the Dashboard on a regular basis to obtain such information. Merchant shall not reverse engineer, decompile, modify, attempt to derive the source code for the Dashboard or any part thereof.

(g) Merchant is solely responsible for tracking and assessing whether the commercial results, if any, that it receives under this Agreement are adequate, and is solely responsible for adjusting or removing its product listings to obtain satisfactory results. In no event will NexTag have any liability or responsibility for the commercial results that Merchant receives or fails to receive. If Merchant believes that the commercial results that it receives as a result of this Agreement are inadequate, its sole remedy is to terminate this Agreement as provided in Section 8. Merchant's sole remedy, and NexTag's sole liability, for invalid impressions or clicks is for Merchant to make a claim for a refund in the form of credits to be used to offset against future Lead Referral Fees, and Merchant must submit any claims for refunds in

writing to NexTag within 45 days of the charge resulting in such claim, otherwise such claim will be deemed irrevocably waived. Any such credits must be used no later than ninety (90) days after provision thereof. Any refunds for invalid impressions or clicks are within NexTag's sole discretion.

(h) If Merchant wishes to temporarily remove some or all of its product listings from the Commerce Search Engine without terminating this Agreement, Merchant must pause the Services through the Dashboard (as defined above) or provide an updated product listing that omits the removed product listings, or, if Merchant does not have access to the Dashboard, Merchant must provide written notice via e-mail to sellersupport@nextag.com. If NexTag has not confirmed that it received an e-mail notice within one (1) business day, then Merchant shall re-send such notice until receipt is confirmed by NexTag. NexTag will make commercially reasonable efforts to remove Merchant Materials within one business day of Merchant's compliance with this Section 3(h), however Merchant will be responsible for all fees that accrue for two (2) business days after Merchant's compliance with this Section 3(h).

4. Content Provided by Merchant. NexTag reserves the right to edit, refuse or remove any content provided by Merchant to NexTag for display on the Commerce Search Engine, including but not limited to the Merchant Materials , at NexTag's sole discretion and at any time without notice. Merchant represents and warrants that the Merchant Materials (i) do not violate any law or regulation; (ii) do not infringe in any manner any copyright, patent, trademark, trade secret or other intellectual property right of any third party; (iii) do not breach any duty toward or rights of any person or entity including, without limitation, rights of publicity or privacy, or otherwise result in any consumer fraud, product liability, tort, breach of contract, injury, damage or harm of any kind to any person or entity; (iv) are not false or misleading; and/or (v) are not defamatory, libelous, slanderous or threatening. NexTag shall have no obligation to monitor or review Merchant Materials or content.

5. Merchant Representations & Covenants. Merchant agrees not to use the Commerce Search Engine for unlawful or tortious activities and agrees to comply with all applicable laws as well as NexTag's privacy policy. Without limiting the foregoing, Merchant will not list on the Commerce Search Engine any product or service the sale, distribution or provision of which is illegal or violates any third party intellectual property rights or other third party rights. Merchant shall not take any action which may cause NexTag to violate its privacy policy or Merchant's privacy policy. Merchant warrants and covenants that (i) this Agreement is a valid agreement enforceable against Merchant according to its terms; (ii) it has the right and authority to enter into this Agreement and grant NexTag all rights granted herein and the individual accepting this Agreement on behalf of Merchant is authorized to bind Merchant hereto; (iii) Merchant will comply with all applicable laws in the receipt and use of the services to be provided by NexTag hereunder and is permitted by applicable law and regulations to perform its obligations hereunder and to sell, provide or distribute any products or services listed on the Commerce Search Engine; (iv) Merchant has read, understands and agrees to the NexTag Terms of Use Agreement posted on NexTag's website(s); and (v) all information provided by Merchant to NexTag as part of Merchant's creation of a Merchant account or use of the Commerce Search Engine, including but not limited to any business, credit or financial information, is true, accurate and complete in all material respects. Merchant further agrees that Merchant will not directly or indirectly interfere with the proper working of the Commerce Search Engine, engage in fraudulent behavior, attempt to manipulate or alter any user ratings or feedback on Merchant (by, for example, providing reviews or ratings of itself or its products) or hide or attempt to hide or misrepresent the identity, source or location of any product service, person or entity. Merchant will not link from any NexTag owned or operated site to any site which: (a) advertises or links to NexTag competitors, (b) contains material that is defamatory, obscene, unlawful, harassing, libelous, invasive of another's privacy, abusive, threatening, harmful, vulgar, tortious or otherwise objectionable, or that infringes or may infringe the intellectual property or other rights of another or (c) offer services or offerings which compete with NexTag or which mislead or confuse consumers about Merchant's or such site's relationship with NexTag. Merchant is solely

responsible for determining what products it will sell or make available to consumers through its own web site or other store.

6. Other Programs. NexTag grants Merchant the right to participate in its Logo Program and ROI Optimizer Program as more fully described, and subject to the terms and conditions set out, in the Logo Program Terms attached as Exhibit A to this Agreement and ROI Optimizer™ Program Terms attached as Exhibit B to this Agreement. NexTag may terminate Merchant's participation in the Logo Program and/or ROI Optimizer Program, and any rights provided in Exhibit C or Exhibit D, at any time, in its sole discretion. Merchant is under no obligation to participate in the Logo Program or ROI Optimizer Program.

7. Confidentiality. Merchant will not use or divulge to third parties any proprietary information of NexTag including all components of the Commerce Search Engine and any information that given the nature of the information or the circumstances surrounding its disclosure reasonably should be considered as confidential. Merchant shall not issue or release, or cause to be issued or released, any press release or other public announcement regarding this Agreement or the existence of this Agreement without the written approval of NexTag, which may be given or withheld in NexTag's sole discretion.

8. Term and Termination. The term of this Agreement shall commence on the date Merchant accepts this Agreement and shall continue until terminated pursuant to this Section 8. Merchant may terminate this Agreement at its convenience upon one (1) business day advance notice by first removing all Merchant product listings from the Commerce Search Engine and second, notifying NexTag by email to sellersupport@nextag.com of Merchant's desire to terminate the Agreement. If NexTag has not confirmed that it received an e-mail notice within one (1) business day, then Merchant shall re-send such notice until receipt is confirmed by NexTag. Merchant may request a refund of any balance remaining in the Merchant Account through the Dashboard, or NexTag will refund any balance remaining in the Merchant Account within thirty (30) days of receiving an email request from Merchant for a refund, sent to sellersupport@nextag.com. All refunds will be made after deducting all amounts due from Merchant and may be subject to reasonable limitations or restrictions established by NexTag. NexTag may terminate this Agreement at any time for convenience, without any penalty, cost or obligation, and without prior notice to Merchant. In the event NexTag terminates this Agreement and suspends the Merchant Account, NexTag will remove all Merchant product listings from the Commerce Search Engine and, upon receipt of an email request from Merchant, refund any balance remaining in the Merchant Account within 30 days of NexTag's receipt of such request and after deducting all amounts due from Merchant. Upon termination of this Agreement, all rights and obligations of the parties shall terminate; provided that Sections 2, 4-5, 7-14, and all accrued rights to payment shall survive termination. NexTag may disable Merchant's Account and/or remove any or all Merchant Materials or product listings from the Commerce Search Engine immediately in NexTag's sole discretion and NexTag shall have no liability for any such actions.

9. Intellectual Property.

(a) All technology, content and other intellectual property conceived, created, developed or acquired by or on behalf of NexTag (or its licensors) at any time, and whether (i) used within and/or incorporated into any aspect of the Commerce Search Engine or (ii) outside the scope of this Agreement will remain the sole and exclusive property of NexTag (collectively "NexTag Property"). NexTag will retain all right, title and interest to any modifications made to the NexTag Property, as well as to any derivatives derived from the NexTag Property, by whomever created.

(b) Merchant acknowledges NexTag's exclusive right, title, and interest in and to the trademarks "NexTag", "Calibex" and any other trademark, service mark or trade name associated with the

Commerce Search Engine ("NexTag Marks"). Neither party shall have or obtain any rights in the other party's marks, except as otherwise provided in writing. Each party acknowledges and agrees that its use of the other's marks will not create any right, title or interest in such marks. Merchant shall not use any NexTag Mark without NexTag's written permission, and then only in compliance with usage guidelines provided from time to time by NexTag.

10. Assignment. This Agreement shall inure to the benefit of and bind the parties hereto, their successors and assigns. NexTag may assign this Agreement to any party and at any time. Merchant may not assign this Agreement, in whole or in part, by operation of law or otherwise, without the prior written consent of NexTag.

11. Limitation of Liability. NEXTAG WILL NOT BE LIABLE FOR LOSS, INTERRUPTION OR INACCURACY OF SERVICE OR DATA, LOST PROFITS OR REVENUE OR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT WHETHER OR NOT FORESEEABLE AND WHETHER OR NOT ANY WARRANTY OR LIMITATION SHALL FAIL OF ITS ESSENTIAL PURPOSE. IN NO EVENT WILL NEXTAG'S LIABILITY ARISING OUT OF THIS AGREEMENT FOR ANY INDIVIDUAL ACTION OR IN THE AGGREGATE EXCEED THE TOTAL AMOUNT PAID BY MERCHANT UNDER THIS AGREEMENT DURING THE TWELVE MONTHS PRIOR TO THE DATE THE CAUSE OF ACTION AROSE. NEXTAG MAKES NO REPRESENTATION THAT THE OPERATION OF THE COMMERCE SEARCH ENGINE WILL BE UNINTERRUPTED OR ERROR-FREE, AND NEXTAG WILL NOT BE LIABLE FOR THE CONSEQUENCES OF ANY INTERRUPTIONS OR ERRORS OF THE COMMERCE SEARCH ENGINE. NEXTAG DISCLAIMS ALL LIABILITY FOR ALL SUCH MATTERS WITH RESPECT TO ITS BUSINESS OPERATIONS NOT EXPRESSLY CONTEMPLATED IN THIS AGREEMENT.

12. Limitation of Warranty/ Independent Investigation.
(A) NEXTAG'S SERVICE IS PROVIDED STRICTLY ON AN "AS IS" AND "AS AVAILABLE" BASIS. NEXTAG DISCLAIMS ALL WARRANTIES, EITHER EXPRESSED OR IMPLIED INCLUDING WARRANTIES OF MERCHANTABILITY, TITLE AND FITNESS FOR ANY PARTICULAR PURPOSE. NEXTAG DOES NOT MAKE ANY GUARANTEES, REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OR COMPLETENESS OF ANY DATA COLLECTED OR TRANSMITTED VIA THE SERVICE OR THE QUALITY OF TRAFFIC, NUMBER OF CLICK THROUGHS OR IMPRESSIONS, CONVERSIONS OR OTHER RESULTS FROM THE COMMERCE SEARCH ENGINE, AND DOES NOT GUARANTEE THAT MERCHANT WILL EARN ANY FEES OR ACHIEVE ANY SPECIFIC BUSINESS RESULTS FROM THE TRANSACTIONS CONTEMPLATED HEREBY.
(B) NEXTAG MAY AT ANY TIME (DIRECTLY OR INDIRECTLY) SOLICIT OR CONDUCT SIMILAR AND/OR COMPETITIVE ARRANGEMENTS ON TERMS THAT MAY DIFFER FROM THOSE IN THIS AGREEMENT OR OPERATE WEB SITES THAT ARE SIMILAR TO OR COMPETE WITH MERCHANT'S WEB SITES OR BUSINESSES. MERCHANT HAS INDEPENDENTLY EVALUATED THE DESIRABILITY OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT AND IS NOT RELYING ON ANY REPRESENTATION, GUARANTEE, OR STATEMENT OTHER THAN AS SET FORTH HEREIN. MERCHANT ENTERS THIS AGREEMENT AT ITS OWN RISK.

13. Indemnification. Merchant agrees to indemnify and hold harmless NexTag and its affiliates, officers, directors, employees, agents and representatives from and against any and all claims, damages, losses, costs (including reasonable attorney's fees), or other expenses that arise or may be incurred directly or indirectly ("Damages") from (a) Merchant's breach or failure to perform of any representation, warranty or obligation of this Agreement; (b) Merchant's use of the Commerce Search Engine (excluding any

Damages resulting from NexTag's breach of this agreement, gross negligence or willful misconduct); (c) any allegations that any of the Merchant Materials infringes upon or otherwise violates any intellectual property or other right(s) of any third party; and/or (d) any conduct or dispute between Merchant and any third party, including but not limited to any user's access or use of Merchant's web site or purchase or attempted purchase of any product or service from Merchant.

14. Miscellaneous

(a) NexTag may modify any of the terms and conditions contained in this Agreement at any time and in its sole discretion. NexTag will attempt to notify Merchant of any such modification via (i) e-mail to the contact e-mail provided by Merchant; (ii) by presenting the new Agreement in its entirety at the time Merchant next logs into the Dashboard; or (iii) by posting the revised Agreement within the Commerce Search Engine. Changes to this Agreement shall be effective five (5) days after provision of notice by any of the methods provided above regardless of whether Merchant actually receives any notification. Merchant is responsible for checking the Dashboard on a regular basis and for ensuring that any contact information, credit card information or other information that it provides to NexTag is current and accurate. Merchant's continued use of NexTag's website upon NexTag's provision of notice as provided above shall be deemed to be Merchant's continued acceptance of this Agreement including any amendments and modifications. If a modification is unacceptable to Merchant, Merchant may terminate this Agreement by giving notice as provided in Section 8 within the five (5) day period specified above. (b) Neither NexTag nor Merchant will be liable for, or will be considered to be in breach of or default under this Agreement on account of, any delay or failure to perform as required by this Agreement as a result of any causes or conditions that are beyond such party's reasonable control and that such party is unable to overcome through the exercise of commercially reasonable diligence. (c) Any notice to be given under this Agreement other than the notice of changes to this Agreement by NexTag, shall be in writing and shall be deemed delivered if delivered by e-mail, if to Merchant, to the contact e-mail address provided by Merchant to NexTag, as may be updated by Merchant from time to time; and if to NexTag, to sellersupport@nextag.com. (d) The failure of either party to enforce any provision of this Agreement will not constitute a waiver of the party's rights to subsequently enforce the provision. The remedies specified in this Agreement are in addition to any other remedies that may be available at law or in equity. (e) Unless Merchant and NexTag have executed a separate, written agreement signed by both parties (in which case the terms of such agreement shall supersede the corresponding terms of this Agreement), this Agreement represents the entire agreement between the parties with respect to the Merchant's participation in the Commerce Search Engine and may be modified only by NexTag as set forth in this Section 14, or in a writing signed by both parties. To the extent that any law, statute, treaty or regulation by its terms as determined by a court, tribunal or other governmental authority of competition jurisdiction, is in conflict with the terms of this Agreement, the conflicting terms of this Agreement shall be superseded only to the extent necessary by the terms required by such law, statute, treaty or regulation. If any provision of this Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of the parties. In either case, the remainder of this Agreement shall continue in full force and effect. Merchant acknowledges and agrees that Merchant's violation of the provisions in this Agreement may cause irreparable harm to NexTag not adequately compensable by monetary damages. Accordingly, Merchant agrees that in addition to any other rights and remedies available to NexTag, NexTag may seek temporary and permanent injunctive relief to prevent any actual or threatened violation of the provisions in this Agreement without having to prove the inadequacy of monetary damages or post a bond or other security. This Agreement will be interpreted, construed and enforced in all respects in accordance with the laws of the State of California, without reference to its choice of law rules. Each party agrees that any and all actions brought to enforce this Agreement or resolve any dispute arising out of this Agreement shall be brought solely in the federal or state courts having jurisdiction in San Mateo, CA and each party hereby consents to and agrees to submit to the exclusive

personal jurisdiction and venue of such courts. (f) This Agreement does not create any joint venture, partnership, agency, or employment relationship between the parties.

A printed version of this Agreement and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to this Agreement to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

PLEASE PRINT AND RETAIN A COPY OF THIS AGREEMENT FOR YOUR RECORDS.

## EXHIBIT A
## Logo Program Terms

1. Subject to the restrictions and limitations in the Merchant Lead Referral Terms of Service to which this Exhibit is attached (the "Merchant Agreement"), NexTag grants to Merchant permission to use a logo referencing NexTag that NexTag may provide or make available to Merchant (the "Logo") only on Merchant's website(s), which shall be owned and operated exclusively by Merchant, for the sole purpose of indicating that Merchant is a participating merchant in NexTag's commerce search engine and under the terms and conditions set forth in this Exhibit.

2. Merchant may only display the Logo on a website(s) that is/are linked to and receives paid clicks from the NexTag search engine commerce program pursuant to the Merchant Agreement.

3. The Logo may only be used to refer to NexTag. Merchant agrees to abide by the NexTag Trademark and Logo Usage Requirements that are made available and/or furnished by NexTag to Merchant from time to time. Merchant agrees not to use the Logo on or in products, product media, shipping containers, packaging, documentation or other items that accompany Merchant's products or services (or those furnished by Merchant) at or after the point of sale, or in the case of services, during or after the delivery of Merchant's services, which would tend to show any connection between Merchant's products and/or services and the Logo.

4. Merchant's use of the Logo must be truthful and not misleading. Merchant may not use the Logo to imply any relationship with, or endorsement or sponsorship by, NexTag that is not true. Merchant may not use the Logo in connection with any disparaging statements about NexTag or its products or services, or in any manner that otherwise reflects poorly on NexTag. Merchant may not use the Logo on any materials that violate any laws or governmental regulations.

5. Merchant shall not display the Logo as a predominant feature on Merchant's website. Unless otherwise agreed, the Logo shall be displayed at exactly 113 pixels wide x 35 pixels high. The Logo must appear smaller than Merchant's name and/or company logo, and it shall not be displayed larger or more prominently than other logos in any of Merchant's materials.

6. NexTag will use commercially reasonable efforts to furnish the Logo in the manner prescribed herein. Merchant shall display the Logo supplied by NexTag unmodified and solely via the provided HTML code which Merchant shall incorporate into the web pages where the Logo will appear. NexTag has sole discretion in determining the type, style, size and category of Logo applicable to Merchant and that Merchant may display. Merchant may not alter the Logo in any way. The Logo may not be combined with any other graphic or textual elements and may not be used as a design of, or be incorporated in, any

other logo or trademark. The Logo must always be accompanied by the registered trademark symbol (®).

7. If Merchant qualifies as a NexTag Trusted Seller, NexTag may elect in its sole discretion to provide Merchant with a NexTag Trusted Seller Logo ("Trusted Seller Logo") subject to the terms of this Exhibit and NexTag's Trusted Seller program. Merchant may not use the Trusted Seller Logo if it is not currently a NexTag Trusted Seller in good standing as determined by NexTag in its sole discretion from time to time, and must cease using the Trusted Seller Logo if instructed at any time by NexTag.

8. Merchant's use of the Logo is subject to NexTag's approval of Merchant's websites and web pages in which the Logo appears. Upon request from NexTag, Merchant must, within five (5) business days, provide to NexTag screenshots and other information pertaining to Merchant's use of the Logo, and written evidence of Merchant's compliance with this Exhibit.

9. Merchant acknowledges NexTag's rights in the Logo, and agrees not to adopt, use, register, or attempt to register anywhere in the world any name, trademark, logo, or similar designation that is confusingly similar to the Logo. Merchant will acquire no rights in the Logo through Merchant's use and shall take no action that may harm the Logo or NexTag's interest in the Logo. If Merchant does happen to obtain rights in the Logo, Merchant will assign those rights to NexTag.

10. NEXTAG DISCLAIMS ALL WARRANTIES REGARDING ITS LOGO, INCLUDING WARRANTIES AGAINST INFRINGEMENT OF THIRD PARTY RIGHTS AND ANY WARRANTIES THAT MAY BE IMPLIED BY APPLICABLE LAW. NEXTAG DOES NOT GRANT ANY INDEMNITY AGAINST INFRINGEMENT OR OTHER CLAIMS ARISING FROM MERCHANT'S USE OF A NEXTAG LOGO UNDER THIS AGREEMENT. MERCHANT'S USE OF ANY SUCH LOGO IS AT MERCHANT'S OWN RISK, AND MERCHANT AGREES TO INDEMNIFY NEXTAG AGAINST ALL CLAIMS AND LIABILITY THAT MAY ARISE FROM MERCHANT'S USE OF THE NEXTAG LOGO, EXCEPT TO THE EXTENT THAT SUCH CLAIM AND LIABILITY IS DIRECTLY BASED ON A THIRD PARTY ALLEGATION OF TRADEMARK INFRINGEMENT UNDER U.S. LAW WHEN MERCHANT HAS USED THE LOGO IN COMPLIANCE WITH THIS AGREEMENT. NEXTAG MAKES NO WARRANTY REGARDING ITS PERFORMANCE AS DESCRIBED HEREIN, INCLUDING BUT NOT LIMITED TO, ITS ABILITY TO PROVIDE THE LOGO TO MERCHANT WITHOUT INTERRUPTION (OR AT ALL), OR THAT THERE WILL BE NO ERRORS IN PROVIDING THE LOGO. NEXTAG PROVIDES NO ASSURANCES OR REPRESENTATIONS REGARDING SALES, REVENUE, OR OTHER ECONOMIC BENEFIT OR BUSINESS RESULT THAT MERCHANT MAY (OR MAY NOT) RECEIVE IN CONNECTION WITH MERCHANT'S USE OF THE LOGO OR PARTICIPATION IN ANY NEXTAG PROGRAM.

11. NexTag reserves the right, at any time and without cause, to terminate any of Merchant's rights set forth in this Exhibit without notice to Merchant. Unless earlier terminated, this Agreement and Merchant's permission to use the Logo will automatically terminate upon the expiration or termination of Merchant Agreement. NexTag reserves the right to take action against any misuse or unfair, misleading, diluting, or infringing use of NexTag's Logo, trademarks or logos. NexTag may change the Logo, or create new logos to replace the Logo currently in use at any time, in its sole discretion. Upon reasonable notice from NexTag, Merchant shall promptly modify Merchant's URL to conform to any such changed or new Logo specifications, such that Merchant remains, at all times, in compliance with this Exhibit.

12. A failure by NexTag to exercise any right under this permission will not create a continuing waiver or expectation of non-enforcement.

13. TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT AND REGARDLESS OF THE NATURE OF THE CLAIM WILL NEXTAG BE LIABLE TO MERCHANT OR ANY THIRD PARTY FOR LOSS OR INACCURACY OF DATA, LOSS OF BUSINESS OR BUSINESS OPPORTUNITIES, LOST PROFITS OR REVENUE OR INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL, MULTIPLE OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT WHETHER OR NOT FORESEEABLE. MOREOVER, MERCHANT AGREE AS A MATERIAL INDUCEMENT FOR NEXTAG TO ENTER INTO THIS AGREEMENT AND FURNISH THE LOGO TO MERCHANT THAT NEXTAG'S LIABILITY FOR DIRECT DAMAGES HEREUNDER SHALL BE LIMITED TO ONE HUNDRED DOLLARS ($100.00).

14. The provisions of Sections 9 through 15 of this Exhibit shall survive any termination or expiration of this Exhibit or the Merchant Agreement.

15. Merchant acknowledges and agrees that its violation of the provisions in this Exhibit may cause irreparable harm to NexTag that is not adequately compensable by monetary damages. Accordingly, Merchant agrees that in addition to any other rights and remedies available to NexTag, NexTag may seek temporary and permanent injunctive relief to prevent any actual or threatened violation of the provisions in this Exhibit without having to prove the inadequacy of monetary damages or post a bond or other security.

## EXHIBIT B
## ROI Optimizer™ Program Terms

1. NexTag hereby grants Merchant a personal, limited, fully-revocable, non-transferable, permission to use its ROI Optimizer only on Merchant's website(s) (which shall be owned and operated exclusively by Merchant) for the sole purpose of tracking of activity and/or sales generated by NexTag leads during such time as Merchant is an active merchant in good standing (as determined by NexTag from time to time in its sole discretion). Merchant's use will be solely in the manner prescribed by NexTag. Merchant agrees to abide by the ROI Optimizer usage requirements furnished by NexTag to Merchant from time to time. Merchant shall use the ROI Optimizer supplied by NexTag or its designated agent unmodified and solely via the provided HTML code which Merchant shall incorporate into Merchant's web pages.

2. Merchant may only use the ROI Optimizer on the webpage(s) within a website(s) that is/are linked to and receive(s) paid referrals from the NexTag Commerce Search Engine. Merchant may not use the ROI Optimizer in any manner that relates to content or materials that violate any applicable laws or governmental regulations.

3. Merchant acknowledges NexTag's rights in the ROI Optimizer, and agrees not to adopt, use, register, or attempt to register anywhere in the world any name, trademark, or similar designation that is confusingly similar to ROI Optimizer. Merchant acquires no rights in the ROI Optimizer through Merchant's use and shall take no action that may harm ROI Optimizer or NexTag's interest in the ROI Optimizer. If Merchant does obtain rights in the ROI Optimizer, Merchant will assign those rights to NexTag upon demand.

4. Without limitation, NexTag, or its affiliates, own, and shall continue to own, all intellectual property rights in and to ROI Optimizer, including any improvements, enhancements or modifications thereto. Merchant shall acquire no interest in ROI Optimizer by virtue of entering into this Agreement, and shall take no position contrary to the ownership rights set forth herein. Merchant shall not reverse engineer, decompile, modify or attempt to derive the source code from ROI Optimizer or any part thereof. NexTag and its affiliates retain all rights in ROI Optimizer, including patents, patent applications, copyrights,

trade secrets, trademarks and other proprietary rights. NexTag reserves the right to alter the content or structure of the NexTag Technology and/or advertisements, servers, reports and other hardware, software and services in use by NexTag or its affiliates on the date hereof or thereafter.

5. The ROI Optimizer is provided strictly on an "as-is" basis. NexTag will only use commercially reasonable efforts to furnish the ROI Optimizer in the manner prescribed herein. NEXTAG DISCLAIMS ALL WARRANTIES REGARDING ROI OPTIMIZER, INCLUDING WARRANTIES AGAINST INFRINGEMENT OF THIRD PARTY RIGHTS AND ANY WARRANTIES THAT MAY BE IMPLIED BY APPLICABLE LAW. NEXTAG DOES NOT GRANT ANY INDEMNITY AGAINST INFRINGEMENT OR OTHER CLAIMS ARISING FROM MERCHANT'S USE OF ROI OPTIMIZER UNDER THIS AGREEMENT. MERCHANT'S USE OF ROI OPTIMIZER IS AT MERCHANT'S OWN RISK, AND MERCHANT AGREES TO INDEMNIFY AND HOLD NEXTAG HARMLESS AGAINST ALL CLAIMS AND/OR LIABILITY THAT MAY ARISE FROM MERCHANT'S USE OF ROI OPTIMIZER, EXCEPT TO THE EXTENT THAT SUCH CLAIM IS DIRECTLY BASED ON A THIRD PARTY ALLEGATION OF PATENT OR COPYRIGHT INFRINGEMENT UNDER U.S. LAW WHEN MERCHANT HAS USED ROI OPTIMIZER IN COMPLIANCE WITH THIS AGREEMENT. NEXTAG MAKES NO WARRANTY REGARDING ITS PERFORMANCE AS DESCRIBED HEREIN, INCLUDING BUT NOT LIMITED TO, ITS ABILITY TO PROVIDE ROI OPTIMIZER TO MERCHANT WITHOUT INTERRUPTION (OR AT ALL), OR THAT THERE WILL BE NO ERRORS IN ROI OPTIMIZER. NEXTAG PROVIDES NO ASSURANCES OR REPRESENTATIONS REGARDING SALES, REVENUE, OR OTHER ECONOMIC BENEFIT OR BUSINESS RESULT THAT MERCHANT MAY (OR MAY NOT) RECEIVE IN CONNECTION WITH MERCHANT'S USE OF ROI OPTIMIZER OR PARTICIPATION IN ANY NEXTAG PROGRAM.

6. NexTag reserves the right, at any time and without cause, to terminate the rights granted to Merchant in this Exhibit without any advance notice to Merchant. Unless earlier terminated, this Agreement and Merchant's permission to use the Logo will automatically terminate upon the expiration or termination of Merchant Agreement. NexTag reserves the right to take action against any misuse or unfair, misleading, diluting, or infringing use of ROI Optimizer, or the ROI Optimizer trademark. NexTag may at any time update ROI Optimizer to replace the ROI Optimizer currently in use. Upon reasonable notice from NexTag, Merchant shall promptly modify its implementation of ROI Optimizer to conform to any such revised ROI Optimizer specifications, such that Merchant remains, at all times, in compliance with this Exhibit.

7. The provisions of Sections 3 through 7 shall survive any termination or expiration of this Exhibit or Merchant's permission to use the ROI Optimizer.

# EXHIBIT 2

----- Original Message -----
From: ApplianceZone WebTeam <justin.a@appliancezone.com>
Date: 3/9/2009 10:00:10 AM
To: John Najac <jnajac41@nextag.com>
Subject: RE: Online Marketing


John,

Sorry for my delay in response, I'll see if I can get a hold of you, via phone, sometime this week. I'll go ahead and create an acct, and hopefully will have our products imported into your system by today. We have approx: 20,000 products & We'll mainly be targeting the Home & Garden area, and in that category = Home Improvement, Kitchen, Major Appliances, & Small Appliances. We sell appliance parts & accessories for all major appliances such as Refrigerators, Washers, Dryers, Stoves, Dishwashers, ect.... and for all major brands such as: Whirlpool, Maytag, GE, Frigidaire, & Kenmore. Now our Marketing Specialist in our company is, CEO Jim Allen. He handles all advertising. I handle all the IT Operations in this company, so I'll be setting up the import and making sure all products are properly placed in there appropriate categories.
To contact us both, please email admin@appliancezone.com <mailto:admin@appliancezone.com>
thanks...

1

# EXHIBIT 3

From: ApplianceZone WebTeam [mailto:justin.a@appliancezone.com]
Sent: Monday, March 09, 2009 8:01 AM
To: John Najac
Subject: Fwd: RE: Online Marketing


John,

Our products were uploaded to your sever ftp://upload.nextag.com/private/AZ237802 @ 10:46.am

the file name is products.csv, not sure how your system will react to the file (how it will know to grab the file). but it is
in the NexTag product format. I would very much appreciate it if you can get these listed asap. You're user-friendly
site & navigation made it very easy for us to set this up, I'll notify Jim that our NexTag acct & products are setup, and
that we are just waiting for the products to be displayed. thanks...

# EXHIBIT 4

Canon EOS Rebel T1I 15.1MP Digital SLR Camera: Compare Prices, View Price History and Read Reviews at NexTag

All Categories : Electronics : Digital Cameras : Canon

Have One to Sell?

## Canon EOS Rebel T1I 15.1MP Digital SLR Camera

SLR - 15.1MP - SD/MMC Memory Card - 3in.

Canon's EOS Rebel T1i is packed with features, both refined and new. In addition to its admirable performance with a 15.1-megapixel Canon CMOS sensor, DIGIC 4 image processor, a 3.0-inch clear view LCD with anti-reflective and scratch-resistant coating, and compatibility with the EOS system of lenses and speedlites, the EOS Rebel T1i adds remarkable Full HD video capture at resolutions up to 1920 x 1080. An HDMI port allows for quick connections to high definition TVs and monitors for easy viewing of your stills and video. The entire operation is simple and easy even if you are a beginner. You'll have uncompromised EOS digital performance with power and flexibility right in the palm of your hand.

Part #: 3818B002
Sellers Found: 16
Available Since: Apr 18, 2009
Lowest Price: $649.00

★★★★ (36 user ratings)
+ Add to Shopping List | Set Price Alert

Price History Jul/09 (c) NexTag

- Compare Prices
- Write Product Review
- Details & Specs
- Price History

Type: All | Genuine (15 from $649.00) | Generic (1 from $799.99)

| Sellers | Seller Ratings | Description | Price | +Tax & Shipping TruePrice |
|---|---|---|---|---|
| PHOTO | Trusted Seller ★★★★★ 233 Seller Reviews | In Stock Free Shipping & Free Cleaning Kit!! | $804.99 | Go to Store |
| Buydig | Trusted Seller ★★★★★ 1078 Seller Reviews | In Stock Free 8GB Card, Free Shipping, Authorized | $809.00 | Go to Store |
| TriState Camera | ★★★★ 465 Seller Reviews | In Stock Free Shipping | $829.01 | Go to Store |

To calculate TruePrice, including exact Tax and Shipping, enter your zip code below.

Enter Zip Code: [        ] Go

Canon EOS Rebel T1i 15.1MP Digital SLR Camera: Compare Prices, View Price History and Read Reviews at NexTag

| Seller | Details | Status | Best Value* Price |
|---|---|---|---|
| US CAMERA | ★★★★ 286 Seller Reviews | In Stock Free Shipping | $729.00 — Go to Store |
| B&H Photo-Video | ❄ Trusted Seller ★★★★★ 1912 Seller Reviews | In Stock $0 Pay 6 Months w/ BillMeLater at CheckOut | $809.95 Free shipping — Go to Store |
| [seller] | ❄ Trusted Seller ★★★★★ 433 Seller Reviews | In Stock Free Shipping | $799.95 — Go to Store |
| mwave | ❄ Trusted Seller ★★★★★ 503 Seller Reviews | In Stock | $899.99 — Go to Store |
| 17StreetPhoto | ❄ Trusted Seller ★★★★ 83 Seller Reviews | In Stock Canon USA-Authorized Dealer | $769.00 — Go to Store |
| DELL | ❄ Trusted Seller ★★★★★ 324 Seller Reviews | In Stock Free Shipping | $849.99 — Go to Store |
| Jersey Shore Digital | New Seller | In Stock Free Shipping | $649.00 — Go to Store |
| PC Richard and Son | ★★★★ 6 Seller Reviews | In Stock Free Shipping | $899.97 — Go to Store |

Canon EOS Rebel T1I 15.1MP Digital SLR Camera: Compare Prices, View Price History and Read Reviews at NexTag

**amazon.com.** ☆ Trusted Seller ★★★★★ 92 Seller Reviews — In Stock Generic Free Shipping — **$799.99** — Go to Store

**Adorama** ☆ Trusted Seller ★★★★★ 572 Seller Reviews — In Stock — **$814.95** — Go to Store

**CompUSA.com** ★★★★★ 1 Seller Review — In Stock — **$839.99** — Go to Store

★★★★★ 9 Seller Reviews — In Stock Free Shipping — **$765.00** — Go to Store

**ANTOnline** ☆ Trusted Seller ★★★★★ 3386 Seller Reviews — In Stock — **$900.19** — Go to Store

**Related Searches**

canon t1i, canon
eos rebel t1i, t1i,
rebel t1i, canon
500d, digital
camera, canon
rebel t1i, eos
rebel t1i, canon
camera, slr digital
camera

NexTag Search for computers, electronics, books, CDs, movies, ...

The NexTag shopping search engine ...

About NexTag | Help | Terms of Use | Privacy Policy | Preferences | Sign In | Advertising Programs

*The Best Value designator is given to the lowest price for an item in new condition from a highly rated NexTag seller. To be highly rated, a NexTag Seller must have at least 10 reviews and an average of four or more stars.

NexTag makes commercially reasonable efforts to ensure the accuracy of product and pricing information displayed on our site. We encourage users to conduct their own research prior to purchasing from the stores listed here. We do not make any guarantees that any information is correct. NexTag.com cannot be held liable for any actions taken based on the product and pricing information provided and NexTag shall not be held responsible for any loss or damage resulting from any business conducted with any company listed at NexTag. Please refer to our Terms of Use for complete details. To report a pricing error, click here.