UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

| | | |
|---|---|---|
| APPLIANCE ZONE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 4:09-cv-0089-SEB-WGH |
| vs. | ) | |
| | ) | |
| NEXTAG, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION TO DISMISS**

This matter is before the Court on Defendant NexTag, Inc's ("NexTag") Motion to Dismiss, or in the Alternative Transfer [Docket No. 28], filed on July 27, 2009; Defendant's Motion for Oral Argument [Docket No. 40], filed on August 24, 2009; and Plaintiff's Motion for Evidentiary Hearing [Docket No. 42], filed on August 28, 2009. Plaintiff, Appliance Zone, LLC ("Appliance Zone"), has brought this action under the Lanham Act, 15 U.S.C. § 1114, et seq., to enjoin alleged trademark infringement on the part of NexTag. For the reasons detailed below, Defendant's Motion to Dismiss is GRANTED; Defendant's Motion for Oral Argument is DENIED; and Plaintiff's Motion for Evidentiary Hearing is DENIED.

*Factual Background*

**I.  The Parties**

Appliance Zone is an Indiana limited liability company with its principal place of business in Corydon, Indiana.  Appliance Zone advertises and distributes appliance parts, appliance accessories, and small appliances to consumers throughout the world, including through its commercial website, appliancezone.com.  Compl. ¶ 6.  According to the Complaint, Appliance Zone is one of the largest appliance part retail distribution businesses in the world.  Id. at ¶ 9.  Appliance Zone holds the following federally registered trademarks: APPLIANCE ZONE and APPLIANCEZONE.COM.  Id.[1]

NexTag is a Delaware corporation with its principal place of business in San Mateo, California.  Id. at ¶ 7.  Nextag operates a commercial comparison shopping website online at www.nextag.com, through which it advertises, for profit, the goods of third parties like Appliance Zone.  Id. at ¶8.  Customers using NexTag's website may "click" on the advertised products, at which point they are redirected to the website of the third-party vendor, where they can complete a purchase of the goods.  Id.

**II.  Appliance Zone's Registration on the NexTag Website**

Appliance Zone registered as an online merchant with NexTag on March 9, 2009.

---

[1]The APPLIANCEZONE mark is held under U.S. Registration No. 3,567,201, and the APPLIANCEZONE.COM mark is held under U.S. Registration No. 3,567,723.  Compl. ¶ 10. Appliance Zone has used these marks since at least July 6, 2007.  Id.

Dec. of Bradley ¶ 4. As part of the new merchant registration process, Appliance Zone completed numerous registration steps contained on five separate web pages in order to create and activate its account with NexTag. Id. During this registration process, after entering its contact information and before entering payment information, Appliance Zone affirmatively "checked" a box next to the statement "I accept the NexTag Terms of Service" by "clicking" that box on the web page. Id. at ¶ 3.[2] This registration process was completed by Appliance Zone employee Justin Allen.[3]

After creating a new merchant account, Justin Allen uploaded to the NexTag website approximately 20,000 product descriptions and 14,000 product images relating to goods sold by Appliance Zone. Compl. ¶ 15; Dec. of Justin Allen ¶ 5. Pursuant to the terms of the Agreement between the parties, Appliance Zone would pay NexTag between $.32 and $.45 each time a shopper "clicked" on one of Appliance Zone's products. Id.

The NexTag Terms of Service Agreement ("Terms of Service" or "Agreement") stated, *inter alia*, "By accepting the Merchant Lead Referral Terms of Service (the 'Agreement'), you 'Merchant' or 'You') are entering into a legal agreement with NexTag, Inc. ('NexTag') that exclusively governs your participation in the NexTag Commerce Search Engine." Id. The Agreement also granted to NexTag a "non-exclusive right and

---

[2] If a registrant fails to "click" this agreement box, he cannot proceed with the account activation process. Dec. of Bradley ¶ 3.

[3] Immediately prior to completing this registration, Justin Allen sent an email to NexTag stating in part that he was going to "go ahead and create an acct., and hopefully will have our products imported into your system by today." Id. (Ex. 2). Justin Allen later confirmed that he had completed the account registration process. Id. at ¶ 6.

license to link to and store, reproduce, . . . transmit, display (publicly or privately), . . . use, and distribute" Appliance Zone's "product list, related products . . . , graphics, trademarks, service marks, logos, trade names, any product . . . listings and other text, images and graphics . . . ." Id. (Ex. 1).  The Agreement also contained a forum-selection clause mandating that all litigation arising out of the Agreement be commenced in a court located in San Mateo County, California.  Id.

### III.  *Appliance Zone's Allegations*

According to the Complaint, in May 2009, Appliance Zone CEO James Allen became aware that NexTag was using the APPLIANCE ZONE mark to promote the prices and goods of Appliance Zone's competitors who also advertised on NexTag's website.  Id. at ¶ 17.  This use of the APPLIANCE ZONE mark thereby generated revenue for NexTag, while directing shoppers to Appliance Zone's competitors, with no benefit flowing to Appliance Zone.  Id.

James Allen contacted NexTag on June 9, 2009, objecting to this conduct and requesting that the APPLIANCE ZONE marks be removed from NexTag's website.  NexTag's use of the marks allegedly continued for at least two more weeks, despite repeated requests by Appliance Zone to cease and desist such use.  Id. at ¶¶ 18-24.

As a result of this alleged wrongful conduct, Appliance Zone filed a one-count Complaint, for Federal Service Mark Infringement, contending that NexTag wrongfully used Plaintiff's registered APPLIANCE ZONE marks in connection with commercial

4

activities. Compl. ¶¶ 29-32.

## *Legal Analysis*

### *I. Standard of Review*

Nextag has brought a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) contending that this Court is an improper venue for the present litigation because the forum-selection clause contained in the parties' Agreement states that actions must be commenced in San Mateo County, California. "A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a rule 12(b)(3) motion to dismiss." Continental Ins. Co. v. M/V ORSULA, 354 F.3d 603, 606-07 (7th Cir. 2003) (citations omitted).[4] Where a forum-selection clause specifies venue with "mandatory or obligatory language," the clause is a mandatory forum selection clause, limiting litigation falling within the clause to the designated venue. Paper Express Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992). However, if the clause instead merely refers

---

[4]The parties address the merits of Nextag's 12(b)(3) motion under Indiana, California, and federal law; thus, the threshold question arises as to what jurisdiction's law applies. "Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state." Kochert v. Adagen Medical Intern., Inc., 491 F.3d 674, 677 (7th Cir. 2007) (citation omitted). However, because "it is unsettled in this circuit 'whether state or federal law applies in a dispute over a forum selection clause when the case is dismissed rather than transferred pursuant to 28 U.S.C. ¶ 1404," Id. (quoting Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759, 761 n.2 (7th Cir. 2006)), we note that, upon close examination, it is clear that the application of the law of each relevant jurisdiction would yield the same results on the issues before the Court.

to "jurisdiction," it is not mandatory unless further language expresses "the parties' intent to make venue exclusive." Id.; see also Docksider, Ltd. v. Sea Tech, Ltd., 875 F.2d 762, 764 (9th Cir. 1989); L.A. Pipeline Construction Co. v. Texas Eastern Products Pipeline Co., 699 F.Supp. 185, 190 (S.D. Ind. 1988) (McKinney, J.).

## II. Discussion

The forum-selection clause in the present case states:

> Each party agrees that any and all actions brought to enforce this Agreement or resolve any dispute arising out of this Agreement or the services provided hereunder shall be brought in San Mateo, CA and each party hereby consents to and agrees to submit to the exclusive personal jurisdiction and venue of such courts.

Dec. of Bradley ¶¶ 5, 8 (Ex. 1).

Given the clear "mandatory language" contained in this clause, if the present litigation "arises out of" the Agreement between the parties, then this forum-selection clause must be enforced, and Nextag's 12(b)(3) motion must be granted. Appliance Zone responds to this asserted basis for dismissal with three arguments: (1) that no agreement between the parties actually existed; (2) that any such agreement was unconscionable if, in fact, it did exist; and (3) that the present lawsuit does not "arise out of" any agreement between the parties.

### A. *The Validity of the Agreement*

Appliance Zone first contends that the Agreement, including the forum-selection

clause contained therein, is invalid because the employee who entered into the Agreement - by uploading images onto NexTag's site and agreeing to the Terms of Service - was not authorized to enter into such a contract.[5] However, beyond this contention, Appliance Zone provides no support for it, and it is clear, based on the facts before the Court, that Justin Allen, a nineteen-year-old website manager who registered Appliance Zone as a merchant on NexTag's website, had apparent authority to carry out all of the steps necessary to bind Appliance Zone financially. No one has claimed that he was not of legal contracting age or of sound mind. C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, inc., 213 F.3d 474, 479 (9th Cir. 2000).

Appliance Zone also contends that the Agreement is invalid because Justin Allen did not intend to enter into a contract. In support, Appliance Zone cites Justin Allen's assertion, contained in documents filed concurrently with the Complaint, that he did not consider his actions to be contractual in nature. Despite this present assertion, Justin Allen's conduct at the time of the transaction clearly indicates the acceptance of a contract. He admits to checking affirmatively the box next to the phrase "I accept the NexTag Terms of Service," and he admits to uploading to the NexTag website approximately 20,000 product descriptions and 14,000 product images. Moreover, it is without dispute that Appliance Zone's CEO also reviewed the Terms of Service at that

---

[5]Although a final assessment of these contractual arguments is not before the Court at this initial stage of the proceedings, analysis of these issues is necessary to determine if the forum-selection clause contained in the Agreement is valid and enforceable.

time and that Appliance Zone paid for the services provided by NexTag. Dec. of Justin Allen ¶ 5; Dec. of Imbler ¶ 3. On the record before the Court, Justin Allen's authorized conduct, and the conduct of Appliance Zone generally, clearly demonstrate the acceptance of a valid contract. Gallent Ins. Co. v. Isaac, 751 N.E.2d 672, 675-77 (Ind. 2001).[6]

*B. Whether the Agreement is Unenforceable*

In a further attempt to negate the effect of the forum-selection clause contained in the Agreement, Appliance Zone contends that the Agreement was unconscionable. According to Appliance Zone, because NexTag's Terms of Service Agreement was not readily manifested in its entirety on the web page, but instead only represented by a "clickable" icon reading "Terms of Service," a reasonably prudent party in Justin Allen's position would not have known of the specifics of the Agreement, including the forum-selection clause. In other words, Justin Allen's "apparent manifestation of . . . consent" was to terms "contained in a document whose contractual nature [was] not obvious." Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal.App.3d 987 (Cal. Ct. App. 1972). According to Appliance Zone, to uphold such terms would be unconscionable, both

---

[6]Appliance Zone also contends that the license provision contained in the Agreement is invalid because public policy cannot abide a contract expressly permitting infringement. This argument is unrelated to the enforceability of the forum-selection clause and must be addressed, if at all, at the merits stage of the proceedings. Besides putting the cart before the horse, this argument also fails substantively because the decisions Appliance Zone cites to support its public policy argument are inapposite.

because of the inconspicuousness of those terms and because of the parties' unequal bargaining positions.

A contract is unenforceable only if it is both procedurally and substantively unconscionable. Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc., 89 Cal. App. 4th 1042, 1053 (Cal. Ct. App. 2001). Thus, to be unenforceable a contract must contain "unreasonable or unknown terms and [be] the product of inequality of bargaining power." Rumple v. Bloomington Hospital, 422 N.E.2d 1309, 1312 (Ind.Ct.App. 1981).

1. The Procedural Fairness of the Agreement

Appliance Zone first contends that it would be procedurally unconscionable to bind a party to the terms of an agreement the party did not read. This argument, however, is unavailing.

NexTag's Terms of Service Agreement was available as a "clickable" icon next to the box Appliance Zone "checked" affirming its acceptance of the Agreement. This method of presenting a Terms of Service Agreement appears typical for the online retail industry. Moreover, it is undisputed that NexTag's Terms of Service Agreement was clearly labeled and placed in a highly visible portion of the web page. Adding further clarity and equity to the process, NexTag *required* Appliance Zone to affirmatively "check" a box stating that it accepted the Terms of Service Agreement. Moreover, if Appliance Zone had not provided this express acceptance, the registration could not have

been completed. Thus, although Appliance Zone might, in fact, have chosen not to read the Agreement, it affirmatively acknowledged that it had done so. If Appliance Zone had, in fact, read the Agreement, it would likely have seen the forum-selection clause, which is set forth clearly in the body of the contract language.

Although the existence of a box labeled "I Agree" in the online contract context does not always indicate assent or signature to an agreement, Specht v. Netscape Communs. Corp., 306 F.3d 17, 32 (2d Cir. 2002), the procedural fairness of the contract-formation process in this case is clear. NexTag made the Agreement highly visible and easily accessible, and required as well an affirmative acceptance of the terms of the Agreement as a prerequisite to completing registration. Justin Allen provided precisely that sort of affirmative agreement to the contract, after which Appliance Zone readily engaged in and paid for NexTag's services. Appliance Zone cannot escape the "fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." Paper Exp., Ltd., 972 F.3d at 757; Micrometl Corp. v. TranzAct Technologies, Inc., 2008 WL 2356511, at *4 (S.D. Ind. Jun. 5, 2008).

Appliance Zone's contention that this process was unfair is plainly dubious in view of the similar process customers are required to undergo in order to use Appliance Zone's own website. Dec. of Imbler, Ex. 3. Specifically, a user of Appliance Zone's website is subject to Appliance Zone's "Terms & Conditions," which the customer gains access to only by clicking on a link, placed inconspicuously at the bottom of the web page, which

redirects the customer to that agreement. Given Appliance Zone's obvious familiarity with "terms of service" agreements like the one at issue here, Appliance Zone's contention that such an agreement process was unfair to them is entirely unconvincing.

2. The Sophistication of the Parties

Appliance Zone's effort to escape the consequences of its actions on the grounds that it is an unsophisticated party is also unavailing. As Appliance Zone readily acknowledges, it is a multimillion-dollar retail business specializing in online sales. Dec. of Imbler ¶¶ 9, 11. Appliance Zone advertises its products with numerous comparison shopping services in addition to NexTag, including Shopzilla, Yahoo and Amazon.com. Id. Although it is true, as Appliance Zone asserts, that as a matter of law a disparity in bargaining power can render an agreement unconscionable, Farm Bureau Gen. Ins. Co. of Michigan v. Sloman, 871 N.E.2d 324, 322 (Ind.Ct.App. 2007), Appliance Zone has cited nothing to show that such a disparity actually exists in this case. Accordingly, Appliance Zone has failed in its effort to demonstrate that the Agreement in this case was procedurally unconscionable. See generally Carnival Cruise Line, Inc. v. Shute, 499 U.S. 585 (1991).

3. The Substantive Fairness of the Agreement

Appliance Zone has also failed to demonstrate that the Agreement was substantively unconscionable. In fact, Appliance Zone has advanced little discussion in

its briefing relating to this issue.[7]  Appliance Zone's allegations describe a contract-formation process that was consistent with industry standards and nearly identical to the process Appliance Zone itself employs.  Moreover, the contract on Appliance Zone's own website appears to be substantively similar to the one on NexTag's website.[8]  Given this apparent procedural and substantive fairness, we must conclude that the Agreement, and in particular the forum-selection clause contained therein, is enforceable.

*C. Whether Plaintiff's Infringement Claim "Arises Under" the Agreement*

Having determined that the forum-selection clause is valid and enforceable, the issue remains as to whether that clause applies in the present action.  Appliance Zone contends that its claim, containing only one count, which is based on federal trademark law, does not relate to the Agreement between the parties and thus raises no contractual question.  Thus, according to Appliance Zone, the forum-selection clause contained in the Agreement is irrelevant.

In advancing this argument, Appliance Zone relies on the holding in Phillips v.

---

[7] In its only argument related to this question, Appliance Zone cites ProCD, Inc. v. Zeidenberg, in which the Seventh Circuit held that a shrink-wrap license included with software was binding on the purchaser.  86 F.3d 1447 (7th Cir. 1996).  In is not clear how Appliance Zone hopes ProCD will help its case, in particular because in that case, as in the present one, the plaintiff failed to argue that the terms of the agreement were substantively unconscionable.  Id.

[8]See, e.g. Dec. of Imbler (Ex. 4, Appliance Zone Terms & Conditions) ("[A]ny suit brought by you in relation to these Terms, this Website, or your use of the Website must be maintained in a state or federal court located in the State of Indiana, and you submit to the personal jurisdiction of such courts.").

Audio Active Limited, 494 F.3d 378 (2d Cir. 2007).  In that case, the Second Circuit construed the phrase "arising out of" in a forum selection clause as relatively narrow and not "encompassing all claims that have some possible relationship with the contract." 494 F.3d at 389.  The Phillips Court concluded, a party's copyright claim did not "arise out of" the contract containing the forum-selection clause in that case.  Id. at 390.  Accordingly, Appliance Zone contends that the federal trademark claim that is the subject of this lawsuit similarly does not "arise out of" the Agreement between the parties.

While the Phillips holding could perhaps command the result Appliance Zone desires, the basis for that holding has been rejected by both the Seventh and Ninth Circuits.  Indeed, the court in Phillips explicitly acknowledged the Seventh Circuit's broader reading of phrases such as "arising out of" contained in forum-selection clauses:

> [W]e decline to ascribe to these three words the expansive connotations set out in Omron Healthcare, Inc. v. Maclaron Exps. Ltd., [28 F.3d 600, (7th Cir. 1994)], where the Seventh Circuit enforced a substantially similar forum selection clause in a comparable factual scenario.  In Omron, the Seventh Circuit enforced a forum selection clause covering "all disputes arising out of" a contract against the plaintiff-distributor who had brought suit alleging that the defendant-manufacturer continued to sell merchandise bearing the plaintiff's trademark after the distribution agreement between the parties had terminated.  The Omron court reasoned that "all disputed the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement."

494 F.3d at 389 (internal citations omitted).  Courts in the Ninth Circuit follow the Omron analysis as well, meaning that no matter which relevant law is applied in this case, Appliance Zone's reliance upon Phillips is misplaced and unavailing.  Lumascape USA, Inc. v. Vertex Lighting, Inc., 2006 WL 825411, at *9-10 (N.D. Cal. 2006); see also

Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509 (9th Cir. 1988).

Thus, even if Appliance Zone's federal trademark claim is not explicitly contract-based, where "claims require resort to the . . . agreement" between the parties, they are subject to the forum-selection clause contained in that agreement. Lumascape USA, Inc., 2006 WL 825411 at *8-10. Any determination as to whether or not NexTag infringed Appliance Zone's trademark rights likely will require an assessment of whether NexTag exceeded the terms of the license contained in the Agreement. Appliance Zone admits as much in both its Complaint and its briefing related to the present motion to dismiss. E.g., Pl.'s Response at 11 ("Private parties may not 'contract' their way around infringement."). Therefore, the present lawsuit is a dispute "the resolution of which arguably depend[s] on the construction of" the agreement between the parties, and Appliance Zone's claim thus "arises out of" that Agreement under controlling Seventh Circuit precedent. Omron, 28 F.3d at 602. For this reason, the present claim falls within the scope of the forum-selection clause, and NexTag's 12(b)(3) motion is properly maintained.

### VII.  *Motions for Oral Argument and Evidentiary Hearing*

Defendant requested oral argument, and Plaintiff requested an evidentiary hearing, for the purpose of clarifying the issues before the Court. Because the written submissions by the parties were adequately developed, the Court has been able to make the necessary rulings without need of oral presentation by the parties.

*III. Conclusion*

  Having carefully considered the parties' arguments relating to the Motion to Dismiss pursuant to Rule 12(b)(3), we conclude that the forum-selection clause in this case mandates dismissal.  Accordingly, Defendant's Motion to Dismiss is <u>GRANTED</u>.  Defendants' Motion for Oral Argument and Plaintiff's Motion for an Evidentiary Hearing are also <u>DENIED</u>.  Final judgment shall issue in accordance with this opinion.

IT IS SO ORDERED.

Date: __12/22/2009_____

                   _____
                   SARAH EVANS BARKER, JUDGE
                   United States District Court
                   Southern District of Indiana

Copies to:

Joel Thomas Beres
STITES & HARBISON
jberes@stites.com

Amy S. Cahill
STITES & HARBISON
acahill@stites.com

Gail M. Hashimoto
HOPKINS & CARLEY
70 S. First Street
San Jose, CA 95113-2406

Stephen J. Kottmeier
HOPKINS & CARLEY
sjk@hopkinscarley.com

Liv Mills-Carlisle
HOPKINS & CARLEY
lcarlisle@hopkinscarley.com

Christie A. Moore
GREENEBAUM DOLL & MCDONALD PLLC
cm@gdm.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com

Jack Allen Wheat
STITES & HARBISON PLLC
jwheat@stites.com